2019 IL App (1st) 161208
No. 1-16-1208
Opinion filed September 19, 2019

FOURTH DIVISION

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Respondent-Appellee, | ) ) | |
| v. | ) ) | No. 94 CR 26967(03) |
| MITCHELL MORROW, | ) ) | The Honorable Evelyn B. Clay, |
| Petitioner-Appellant. | ) | Judge, presiding. |

JUSTICE GORDON delivered the judgment of the court, with opinion.
Justices McBride and Justice Reyes concurred in the judgment and opinion.

**OPINION**

¶ 1        Defendant, Mitchell Morrow, was convicted after a jury trial of murder and armed robbery and sentenced to concurrent terms of 60 years for murder and 20 years for armed robbery. On appeal, this court vacated his conviction for armed robbery.

¶ 2        In this appeal, defendant asks this court to reverse an order denying him leave to file a successive postconviction petition. In his successive petition, defendant claims that his appellate counsel was ineffective for failing to ask this court to remand for resentencing after

we vacated his armed robbery conviction. For the following reasons, we affirm the trial court's denial.

¶ 3                                    BACKGROUND

¶ 4        This court has set forth the evidence at defendant's trial in detail on two prior occasions, and we incorporate those discussions here by reference. *People v. Morrow*, 303 Ill. App. 3d 671, 674-675 (1999); *People v. Morrow*, 2013 IL App (1st) 121316, ¶¶ 5-43. In sum, the State's evidence at trial established that defendant was a pimp and that he shot a customer after a physical altercation broke out between the customer and two prostitutes inside the customer's vehicle. The fistfight occurred because the customer realized that one of the prostitutes was also attempting to take his wallet. After the murder, the two prostitutes, defendant, and another pimp split equally the $160 in the customer's wallet. On appeal, this court reversed defendant's armed robbery conviction, finding that there was no evidence that defendant intended to rob the customer; rather, defendant had approached the customer's vehicle in response to the altercation. *Morrow*, 303 Ill. App. 3d at 683-84.

¶ 5        We describe in detail defendant's sentencing process since defendant claims on this appeal that the sentencing judge was unduly influenced by the subsequently vacated armed robbery conviction when it sentenced defendant to 60 years for murder.

¶ 6        At the time of his sentencing, the death penalty was still available in Illinois, and the State sought it for defendant. On April 15, 1996, defendant waived his right to a jury for his death penalty hearing, which was subsequently held on May 28, 1996. During the first stage of the death penalty hearing, the State introduced testimony about defendant's age and introduced a certified copy of his birth certificate, which established that defendant was 26 at

the time of the offense. After listening to arguments by counsel for both sides, the trial court found defendant eligible "for a capital sentencing hearing under Illinois law," explaining:

> "THE COURT: Considering the arguments of counsel, [defendant's counsel], considering the law that exists in this area, especially the law of accountability, I think that [defendant's] acts are well within the felony murder doctrine.
>
> The facts here I agree do not impart the classic theory of murder in the course of another felony, but I will not impugn the jury verdict finding [defendant] guilty of murder and armed robbery nor will I retreat from the law in this area, the law of accountability.
>
> Suffice it to say I find that there is sufficient conduct to prove by the prosecution that [defendant] is guilty of first degree murder and is accountable for the taking of the victim's property.
>
> Based on the arguments made to me, I find beyond a reasonable doubt that the defendant is eligible for a capital sentencing hearing under Illinois law.
>
> Are the parties ready to proceed in aggravation and mitigation at this time?"

The trial court then proceeded to the second stage, where it considered factors in aggravation and mitigation.

¶ 7     The State called three witnesses in aggravation. First, Dennis Dobson, a Chicago police officer, testified that, on October 23, 1988, when he and his partner attempted to arrest a woman for prostitution, defendant started yelling obscenities at the officers. After the officers told him to be quiet, defendant responded "f*** you, I will kick your a***." Defendant was then arrested for disorderly conduct. However, defendant's case was subsequently dismissed.

3

¶ 8        Ronald Behling, a Chicago police officer, testified that, on February 7, 1994, he also arrested defendant. Defendant had been walking on the sidewalk, when he observed the officer and subsequently dropped a plastic bag containing four foil packets of suspected heroin. After his arrest, defendant informed the officer that the substance was "not real," that "he had made them up to sell again," that it was "only Actifed," and that "he knew he could be killed if he got caught selling the stuff but he needed the money."

¶ 9        John O'Shea, a Chicago police officer, testified that, on November 8, 1992, defendant kicked and punched him as O'Shea attempted to arrest a prostitute. The officer held out his badge and identification in his hand and informed defendant that he was a police officer, but defendant responded "f*** you, I want my woman back, *** give her to me." After other officers arrived, O'Shea arrested both defendant and the prostitute. At the police station, when O'Shea tried to handcuff defendant to the wall, defendant punched O'Shea repeatedly in the face and side. Injuries to O'Shea's side, face, and hands required O'Shea to seek medical treatment at a hospital. Defendant also had injuries and was transported to a hospital, where he received multiple stitches.

¶ 10        In mitigation, defendant called five witnesses. First, the defense called Lamar Thomas, defendant's first cousin, who testified that he had known defendant his whole life. Thomas had worked as a police officer and detective for the Chicago Police Department for 26 years and was currently recovering from an illness. During the three years prior to defendant's incarceration, Thomas visited with defendant usually once a month at holidays or family affairs. Thomas testified that defendant was "always a very polite young man," and that Thomas had "never seen him do anything untoward." On cross-examination, Thomas admitted that he was unaware that defendant was a pimp.

¶ 11    Daisy McLendon, defendant's sister, testified that she had been employed as a medical assistant at a hospital for over 10 years and that she was also an ordained minister. As a minister, she had met with defendant on a weekly basis during the last two or three years. McLendon testified that, "since last May, following the incident, he has really made a commitment to the Lord of his life. And he has no desire to be affiliated with any gang or any such thing of that sort." She further testified that "my brother while being held here at Cook County as a prisoner was severely attacked and beaten nearly to death. He had several facial fractures and his face was severely swollen. And this was a direct result of denying being a part of any gang." McLendon testified that defendant was "always very kind" and "helpful," but she was not aware prior to his arrest that he was a pimp.

¶ 12    Josie Bradley, defendant's aunt, testified that, during the two or three years prior to defendant's arrest, she encountered defendant at family gatherings, as well as two or three times a month. Bradley described defendant as "a kind, soft spoken young man."

¶ 13    Ida Mae Jones, defendant's mother, testified that defendant was "always lovely," never disrespectful, and was helpful around the house. Tracy Morrow, defendant's sister, testified that he was a "loving" brother and "always around."

¶ 14    After both sides rested, the trial court heard arguments from counsel. The State asked the trial court to impose the same death penalty that defendant had "imposed on [the victim] when he killed him, for a senseless, [*sic*] no reason." In contrast, defense counsel emphasized that defendant had "only two misdemeanors, one for pimping and one for disorderly conduct." The trial court found:

"Based on the arguments presented to me; based on Illinois law, confine [*sic*] Illinois law to the evidence, I find that the defendant *** is 28 year[s] old; he was 26 when the acted is [*sic*] resulted in the death of the victim.

I find although he has had his contacts, brushes with the law in the past, he has no significant history, prior criminal activity as contemplated by the Illinois Death Penalty Act.

I find therefore that there is sufficient mitigation for this Court to be precluded from imposing the death sentence. Defendant will be sentenced under ordinary Illinois criminal sentencing law."

¶ 15    Both counsel indicated that they had nothing further to present in mitigation or aggravation. The State then asked the trial court to impose consecutive rather than concurrent sentences. After listening to argument from both sides, the trial court observed, in aggravation, that defendant's "acts" were "senseless" and "vicious." "An unarmed man whose only mistake was to in a rather pathetic way look[ ] for sex for hire, was gunned down because he attempted to rightly stop a prostitute or prostitutes from taking his property, his wallet."

¶ 16    In mitigation, the trial court observed:

"In mitigation, I will agree with your attorney, [defendant], that I don't think as you charged the [victim's] car, you had formed a premeditated intent to take the life of the victim ***, however when you reached the window, you realized that he, the victim, was resisting, fighting the prostitutes; you shot him not once but at least twice, inflicting a fatal chest wound.

There has to be a message of deterrence, [defendant], and you at an age, in your late 20's, must be sentenced so that you will no longer be a threat to society when you are released.

For the first degree murder of the unfortunate victim, ***, I sentence you to 60 years in the Illinois Department of Corrections.

For the armed robbery of [the victim], I sentence you to a concurrent term of 20 years in the Illinois Department of Corrections.

You will serve 60 years in the Illinois Department of Corrections, sir, and you can be thankful that some day you will have a chance to walk about in society, unlike [the] poor [victim]."

Thus, the trial court rejected the State's request for both the death penalty and consecutive sentences. On May 28, 1996, the trial court entered an "Order of Sentence and Commitment" to IDOC stating that defendant was sentenced to 60 years on count I, for first degree murder, which was to run concurrently with a sentence of 20 years for count IV, for armed robbery.

¶ 17    After sentencing, defendant filed a timely notice of appeal on June 26, 1996. Which counsel represented defendant at what time is important to understanding certain arguments made by the parties on the current appeal, so we provide the names of the agency and firm here. The Office of the State Appellate Defender represented defendant on his direct appeal. However, on March 12, 1997, the State Appellate Defender withdrew, and on March 20, 1997, the appellate court appointed Jenner & Block to represent defendant in his appeal on a *pro bono* basis.

¶ 18    On March 1, 1999, this court affirmed defendant's murder conviction and sentence but vacated his armed robbery conviction and sentence, finding that the State had failed to

prove beyond a reasonable doubt that defendant had any intent to rob the victim. *Morrow*, 303 Ill. App. 3d at 683-84. Our opinion specified that defendant was represented by R. Douglas Rees and Kristina M. Entner of Jenner & Block. The supreme court denied defendant's petition for leave to appeal on June 2, 1999. *People v. Morrow*, 184 Ill. 2d 567 (1999) (table).

¶ 19   On April 23, 1999, which was a little over a month after this court had vacated his armed robbery conviction, defendant filed a postconviction petition with the assistance of a different counsel, namely, Jeffrey B. Granich. The petition was assigned to Judge John E. Morrissey, who had presided over defendant's jury trial and death penalty hearing and who had sentenced defendant. On May 6, 1999, Judge Morrissey dismissed the petition.

¶ 20   However, on June 8, 1999, Granich filed a "Motion to Advance and Reconsider," which observed that the trial court had denied defendant's petition on May 6, 1999, but that, on May 19, 1999, the trial court had "advised [Granich] to advance this cause for reconsideration." Thus, the motion asked that defendant's "cause be advanced and placed on call for June 15, 1999." In response to the State's subsequent motion to dismiss, Granich explained that defendant's postconviction petition "was originally docketed without the presence of his attorney" and the trial court had therefore granted defendant "leave to re-docket his petition and place it back on the call for argument."

¶ 21   On January 19, 2000, the State filed a motion to dismiss and subsequently filed a supplement to its motion. In its supplement, the State observed, first, that it was inappropriate for it to even be filing such a motion. The State explained that the trial court dismissed the petition on May 6, 1999, as frivolous and patently without merit; that a trial judge is required to make a first-stage determination without input from the State; that the May 6, 1999,

dismissal was within these parameters; and that defendant's only recourse then was to file a notice of appeal. However, the State observed that, at "a subsequent [c]ourt date in June of 1999, the [c]ourt advised the People that he would entertain argument on the petition." In its motion, the State argued, in the alternative, that if the trial court did entertain argument, defendant's petition was without merit.

¶ 22    In its "Supplement to Motion to Dismiss," the State also observed: "Here the trial court resentenced petitioner on his murder conviction on July 27, 1999. Petitioner cannot demonstrate how that resentencing was influenced by the armed robbery conviction vacated by the trial court in compliance with the appellate record."

¶ 23    A half-sheet entry on July 20, 1999, observes that the appellate court affirmed in part and reversed in part and that "Cause remanded for a corrected mittimus before J. Morissey on 7-27-99." A half-sheet entry for Judge Morrissey on July 27, 1999, states on one line "PP Judgment vacated Ct 4" and on the next line "60 yrs Ct 1." "PP" means "Parties Present." Count IV was the armed robbery conviction, which this court vacated, and count I was the murder conviction. A half-sheet entry on another page, which is also for July 27, 1999, and also for Judge Morrissey states: "PP Arm Robbery Conviction Vacated. Mitt to reissue on sentence of 60 years. IDOC. First Degree Murder Only." The record on appeal does not contain a report of proceedings for July 27, 1999.

¶ 24    An "Order of Sentence and Commitment" to IDOC, dated July 27, 1999, states: "On 5-28-96 the Honorable John E. Morrissey sentenced the Deft on a verdict of guilty to a term of 60 years." The order lists only one offense: "First Degree Murder."

¶ 25    A year later, on July 27, 2000, a different judge, Judge Evelyn B. Clay, heard argument on the State's motion to dismiss defendant's postconviction petition. First, Granich

explained to the new judge what had previously happened in the case. Granich explained that, a week after the dismissal, Granich was in Judge Morrissey's courtroom on a different matter, when the judge asked Granich to approach the bench and "informed [Granich] that he had reconsidered his ruling." Judge Morrissey told Granich that "he felt it was inappropriate to rule on a petition without" Granich and defendant "being present." In response, Granich filed a motion to redocket and advance the petition. Granich stated: "I believed [what] Judge Morrissey was going to do was going to have an argument, to allow argument to determine whether or nor an evidentiary hearing was required."

¶ 26    With respect to the vacated armed robbery conviction, the State argued that defendant had, in fact, been resentenced. The assistant state's attorney did not claim personal knowledge of this event but rather stated that he had "found it on the computer," and that both the computer and the half-sheets "indicate[d]" a resentencing. As a result, he argued that there was no evidence "when [defendant] was initially sentenced, nor when he was sentenced afterwards" that "the sentencing on the murder was *** influenced by the armed robbery."

¶ 27    In response, Granich stated that he wanted to discuss "the resentencing issue." He represented to Judge Clay that, after the armed robbery conviction was reversed by the appellate court, "[m]y client was never resentenced." Granich then made a lengthy argument for resentencing:

> "Now, this Court knows when you are considering sentencing an individual on two cases that are concurrent, does [one] need to say that a judge doesn't consider one case or the other, that there's no inference? When you know that both cases are running at the same time, don't you remember both cases?

> * * *

I believe it's cognizable [under the postconviction statute], Judge, because the appellate court ruled that there was not sufficient evidence for the armed robbery. *Nobody has been able to constitutionally examine the sentence that my client received. Whether or not that sentence was just on the murder or was it included with the armed robbery. And that's what I believe the post-conviction petition is for, to bring a constitutional claim that was not recognized by the appellate court back in front of the trial court.* To go back to the trial court and say, hey, the appellate court doesn't agree with you on the armed robbery or doesn't agree with the jury on the armed robbery, is it possible, Judge, that when you sentenced my client you considered both cases because one you should not have? *** That's what I believe a post-conviction petition is for. ***

I think when the judge went concurrent, the armed robbery case was part of his thinking and part of my client's sentence." (Emphasis added.)

Granich ended by arguing that "this Court has the jurisdiction to re-sentence my client if this Court chooses to do so." He acknowledged that "this Court is in [the] particularly strange situation of trying to come in at this late moment with a very confused record and try to figure out what Judge Morrissey intended to do" and that "the best thing to do would be to make up your own mind on this situation."

¶ 28 On September 19, 2000, Judge Clay issued a written order granting the State's motion to dismiss defendant's postconviction petition. In the order, Judge Clay observed that the trial court had "summarily dismissed the petition on May 6, 1999," but had "reconsidered its ruling and informed defense counsel that oral argument would be allowed because the ruling was made in the absence of both petitioner and his counsel." Judge Clay's order granted the

State's motion to dismiss without addressing the resentencing issue argued by both parties, and defendant appealed.

¶ 29     This court observed that, on appeal, defendant "claimed that he was denied due process by the imposition of an excessive, 60-year sentence for first degree murder because the trial court was unduly influenced by the armed robbery conviction that was later reversed." *People v. Morrow*, No. 1-00-3878, at 4 (June 7, 2002) (unpublished order under Illinois Supreme Court Rule 23).

¶ 30     With respect to this claim, this court found:

"Defendant *** raises the claim that he was denied due process by the imposition of a 60-year sentence for first degree murder. In his petition, defendant raised this claim primarily in the context of the death penalty hearing and alleged that [trial counsel] did not request adequate time for the preparation of the presentence investigation report. He also claimed that, although the trial court 'clearly felt' some mitigating factors existed, the court based its maximum-term sentence for murder on his involvement in the armed robbery. On appeal, defendant again asserts that the trial court was unduly influenced by the armed robbery conviction, which was reversed, and contends that the 60-year sentence was excessive.

However, the alleged excessiveness of defendant's murder sentence is not properly before this court on collateral review. Despite challenging his armed robbery conviction on direct appeal, defendant failed to object to either the sentence imposed for that conviction or the murder conviction. Defendant's sentencing hearing was a matter of record and defendant's failure to raise any sentencing issues on direct review thereby waived the issue from further consideration. See *People v. Towns*, 182

Ill. 491, 503 (1998). Moreover, defendant's sentence for murder was within the statutory range (730 ILCS 5/5-8-1(a)(1)(a) (West 1998)), and his assertion about factors that may have influenced the trial court was unsupported. Therefore defendant's due process claim amounted to nothing more than a conclusory allegation, which was properly dismissed." *Morrow*, No. 1-00-3878, at 10-11.

¶ 31         On February 11, 2010, defendant filed a *pro se habeas corpus* petition, which the trial court dismissed on March 31, 2010. On December 16, 2010, this court affirmed the dismissal on appeal. *People v. Morrow*, No. 1-10-1243 (2010) (unpublished summary order under Illinois Supreme Court Rule 23(c)). In our order, we observed that the Public Defender of Cook County, who represented defendant on appeal, had filed a motion to withdraw as counsel pursuant to *Pennsylvania v. Finley*, 481 U.S. 551 (1987), because he had reviewed the entire record and concluded that there was no arguable basis for relief. We stated that we had also carefully reviewed the record, and that we also could find no issue of arguable merit. Thus, we allowed counsel's motion to withdraw and affirmed the dismissal.

¶ 32         On February 15, 2011, defendant filed a *pro se* petition for relief from judgment pursuant to section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2010)). The petition alleged that the indictment was "fatally defective as duplicitous." On April 22, 2011, the trial court issued a five-page typed order, dismissing the petition as "frivolous and without merit." The trial court explained that the indictment was not duplicitous, but rather that the "indictment charged the offense of murder in three different ways, under separate statutes." On December 7, 2012, in a summary order, this court observed that the State Appellate Defender had filed a *Finley* motion. Counsel's brief in support of the motion was sent to defendant, who responded. After carefully reviewing the record, counsel's motion and

13

brief, and defendant's response, this court granted counsel's motion to withdraw and affirmed the trial court in a summary order. *People v. Morrow*, No. 1-11-2279 (2012) (unpublished summary order under Illinois Supreme Court Rule 23(c)).

¶ 33        On December 5, 2011, while defendant's appeal of his *pro se* section 2-1401 petition was still pending, defendant filed a motion for leave to file a successive petition. The 2011 motion is not the subject of the current appeal, but rather was the subject of an earlier order by this court. See *Morrow*, 2013 IL App (1st) 121316. In his first proposed successive petition, defendant argued that his appellate counsel was ineffective for not arguing on direct appeal that defendant's trial counsel was ineffective for failing to request second-degree murder jury instructions. *Morrow*, 2013 IL App (1st) 121316, ¶ 50. On December 31, 2013, we found that "counsel's decision not to request a second-degree murder instruction was appropriate as a matter of trial strategy," and thus, we affirmed defendant's conviction and sentence. *Morrow*, 2013 IL App (1st) 121316, ¶ 53. On January 30, 2014, we denied his petition for rehearing; on May 28, 2014, the supreme court denied his petition for leave to appeal. *People v. Morrow*, No. 117413 (Ill. May 28, 2014) (supervisory order).

¶ 34        While his first motion for leave to file a successive petition was pending before this court, defendant filed a *pro se* motion on March 1, 2013, for DNA and ballistics testing on the evidence in this case. The record indicates that defendant was subsequently represented on this matter by the Bluhm Legal Clinic at the Northwestern Pritzker School of Law. On October 2, 2014, the trial court entered an agreed order for the requested DNA and ballistics testing.

¶ 35        On April 1, 2013, defendant filed another *pro se* section 2-1401 petition, arguing that his sentence was void because the trial court sentenced him to concurrent terms of 60 years

for murder and 20 years for armed robbery, when consecutive terms were statutorily required.

¶ 36      On September 5, 2013, defendant filed a second *pro se* motion for leave to file a successive petition that alleged that the State knowingly presented perjured testimony at his trial.

¶ 37      On February 13, 2014, while defendant's petition for leave to appeal was still pending regarding his first successive petition, defendant filed a third motion for leave to file a different successive petition, which is the subject of this appeal. This motion and petition were filed by counsel, namely, the Public Defender of Cook County.

¶ 38      In this motion, defendant argued through counsel that the appellate court erred by failing to remand for resentencing when it vacated the armed robbery conviction, that appellate counsel was ineffective for failing to ask the appellate court to remand for resentencing, that defendant's postconviction attorneys were ineffective for failing to raise the ineffective assistance of appellate counsel, and that defendant's 60-year sentence was excessive in light of his criminal history of only misdemeanor offenses.

¶ 39      On January 28, 2016, in open court, the trial court stated: "The Court appoints the Public Defender to represent the defendant on whatever it is that is pending." The assistant public defender (APD) and the assistant state's attorney both informed the trial court that, with respect to the prior testing order, the DNA testing was completed and both parties had a copy of the lab report, which was also handed to the court. The APD also conceded that the second motion for leave to file a postconviction petition, filed on September 5, 2013, was meritless. After the DNA lab report was filed, attorneys from the Bluhm Legal Clinic moved to represent defendant on only the DNA issue, which the trial court granted.

¶ 40    On March 17, 2016, the trial court denied counsel's motion for leave to file the petition at issue on this appeal, finding that defendant could not establish either cause or prejudice. With respect to cause, the trial court observed that defendant and his counsel had known about the vacated robbery conviction since 1999, and with respect to prejudice, the trial court observed that the appellate court had specifically considered whether his sentence was excessive and rejected that claim. See *Morrow*, No. 1-00-3878, at 10-11 (this court's Rule 23 order). Therefore, the trial court found that defendant had failed to establish either cause or prejudice and denied him leave to file the petition. On March 17, 2016, defendant filed a notice of appeal, and this appeal followed.

¶ 41                                    ANALYSIS

¶ 42    Defendant appeals the trial court's denial of his petition for leave to file a successive postconviction petition. For the following reasons, we affirm the trial court.

¶ 43                        I. Stages of a Postconviction Petition

¶ 44    Although the issue before us is the very preliminary question of whether the petition can even be filed, we provide here a summary of the stages to show how the subsequent process sheds light on this preliminary step.

¶ 45    The Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2018)) provides a statutory remedy for criminal defendants who claim that their constitutional rights were violated. *People v. Edwards*, 2012 IL 111711, ¶ 21. The Act is not intended to be a substitute for a direct appeal; instead, it is a collateral proceeding which attacks a final judgment. *Edwards*, 2012 IL 111711, ¶ 21.

¶ 46    The Act provides for three stages of review by the trial court. *People v. Domagala*, 2013 IL 113688, ¶ 32. At the first stage, the trial court may summarily dismiss a petition that

is frivolous or patently without merit. 725 ILCS 5/122-2.1(a)(2) (West 2018); *Domagala*, 2013 IL 113688, ¶ 32.

¶ 47        However, for a successive petition to even be filed, the trial court must first determine whether the petition (1) states a colorable claim of actual innocence (*Edwards*, 2012 IL 111711, ¶ 28) or (2) establishes cause and prejudice (*People v. Smith*, 2014 IL 115946, ¶ 34). This standard is higher than the normal first-stage "frivolous or patently without merit" standard applied to initial petitions. *Edwards*, 2012 IL 111711, ¶¶ 25-29; *Smith*, 2014 IL 115946, ¶ 34 ("the cause-and-prejudice test for a successive petition involves a higher standard than the first-stage frivolous or patently without merit standard that is set forth in section 122-2.1(a)(2) of the Act").

¶ 48        Since a filed successive petition has already satisfied a higher standard, the first stage is rendered unnecessary and the successive petition is docketed directly for second-stage proceedings. See *People v. Sanders*, 2016 IL 118123, ¶¶ 25-28 (with a successive petition, the initial issue before the trial court is whether it "should be docketed for second-stage proceedings"); *People v. Jackson*, 2015 IL App (3d) 130575, ¶ 14 ("When a defendant is granted leave to file a successive postconviction petition, the petition is effectively advanced to the second stage of postconviction proceedings."); *People v. Almodovar*, 2013 IL App (1st) 101476, ¶ 81 (reversing the trial court's denial of the defendant's motion for leave to file a successive petition and remanding for second-stage proceedings).

¶ 49        If a trial court permits a successive petition to be filed or does not dismiss an initial petition at the first stage, the petition then advances to the second stage, where counsel is appointed if a defendant is indigent. 725 ILCS 5/122-4 (West 2018); *Domagala*, 2013 IL 113688, ¶ 33; *People v. Wrice*, 2012 IL 111860, ¶ 90 (after reversing the trial court's denial

of leave to file a successive petition, the supreme court remanded "for appointment of postconviction counsel and second-stage postconviction proceedings"). After counsel determines whether to amend the petition, the State may file either a motion to dismiss or file an answer to the petition. 725 ILCS 5/122-5 (West 2018); *Domagala*, 2013 IL 113688, ¶ 33. At the second stage, the trial court must determine "whether the petition and any accompanying documentation make a substantial showing of a constitutional violation." *People v. Edwards*, 197 Ill. 2d 239, 246 (2001).

¶ 50        "The second stage of postconviction review tests the legal sufficiency of the petition. Unless the petitioner's allegations are affirmatively refuted by the record, they are taken as true, and the question is whether those allegations establish or 'show' a constitutional violation. In other words, the 'substantial showing' of a constitutional violation that must be made at the second stage [citation] is a measure of the legal sufficiency of the petition's well-pled allegations of a constitutional violation, *which if proven* at an evidentiary hearing, would entitle petitioner to relief." (Emphasis in original.) *Domagala*, 2013 IL 113688, ¶ 35.

¶ 51        Both the second stage and a motion for leave to file a successive petition require a review of "the petition and any accompanying documentation." *Edwards*, 197 Ill. 2d at 246 (second-stage review); *Edwards*, 2012 IL 111711, ¶ 24 (motion for leave to file a successive petition). For the second stage not to be superfluous for a successive petition, it must be that the "substantial showing" required at the second stage is greater than the "probability" required for a successive petition to receive leave for filing. *Smith*, 2014 IL 115946, ¶ 29 (expressing a desire not to "render the entire three-stage postconviction process superfluous").

¶ 52    If the defendant makes a "substantial showing" at the second stage, then the petition advances to a third-stage evidentiary hearing. *Domagala*, 2013 IL 113688, ¶ 34. At a third-stage evidentiary hearing, the trial court acts as a fact finder, determining witness credibility and the weight to be given particular testimony and evidence and resolving any evidentiary conflicts. *Domagala*, 2013 IL 113688, ¶ 34. This third stage is the same for both initial and successive petitions. *Cf. Smith*, 2014 IL 115946, ¶ 29 ("The legislature clearly intended for further proceedings on successive postconviction petitions.").

¶ 53                    II. Successive Petitions

¶ 54    Although our supreme court has made clear that the Act contemplates only one postconviction proceeding, "[n]evertheless, [the supreme] court has, in its case law, provided two bases upon which the bar against successive proceedings will be relaxed." *Edwards*, 2012 IL 111711, ¶ 22. Those two bases are (1) a showing of cause or prejudice or (2) a claim of actual innocence. *Edwards*, 2012 IL 111711, ¶¶ 22-23. In the case at bar, defendant alleges only cause and prejudice, so we discuss only that basis below.

¶ 55    Under the cause-and-prejudice test, a defendant must establish both (1) cause for his or her failure to raise the claim earlier and (2) prejudice stemming from his or her failure to do so. *Edwards*, 2012 IL 111711, ¶ 22 (citing *People v. Pitsonbarger*, 205 Ill. 2d 444, 459 (2002)).

¶ 56    Our supreme court has found that "a defendant's *pro se* motion for leave to file a successive postconviction petition will meet the section 122-1(f) cause and prejudice requirement if the motion adequately alleges facts demonstrating cause and prejudice." *Smith*, 2014 IL 115946, ¶ 34.

"[L]eave of court to file a successive postconviction petition should be denied when it is clear, from a review of the successive petition and the documentation submitted by the [defendant], that the claims alleged by the [defendant] fail as a matter of law or where the successive petition with supporting documentation is insufficient to justify further proceedings." *Smith*, 2014 IL 115946, ¶ 35.

¶ 57    As "both prongs of the cause and prejudice test must be satisfied," we may uphold the denial of leave to file the claim if defendant has failed to establish either prong. *People v. Davis*, 2014 IL 115595, ¶ 56 (affirming the denial of leave to file where the defendant failed to establish cause for failing to raise this claim earlier since the evidence was "not of such character that it could not have been discovered earlier by the exercise of due diligence").

¶ 58                                     III. Standard of Review

¶ 59    "The denial of a defendant's motion for leave to file a successive postconviction petition is reviewed *de novo*." *People v. Bailey*, 2017 IL 121450, ¶ 13; *Wrice*, 2012 IL 111860, ¶ 50 (applying a *de novo* standard of review to the State's argument concerning lack of prejudice to the defendant since these "arguments raise purely legal issues"); see also *People v. Diggins*, 2015 IL App (3d) 130315, ¶ 7 (applying a *de novo* standard of review to the trial court's denial of the defendant's motion to file a successive petition alleging cause and prejudice because this issue is "resolved on the pleadings" alone); *People v. Crenshaw*, 2015 IL App (4th) 131035, ¶ 38 (applying a *de novo* standard of review to the trial court's denial of the defendant's motion to file a successive petition alleging cause and prejudice).

¶ 60    In addition, when our review is limited to documentary materials, as it is here, then our review is generally *de novo*. *Townsend v. Sears, Roebuck & Co.*, 227 Ill. 2d 147, 154 (2007) ("Where the circuit court does not hear testimony and bases its decision on

documentary evidence, the rationale underlying a deferential standard of review is inapplicable and review is *de novo*."); *Dowling v. Chicago Options Associates, Inc.*, 226 Ill. 2d 277, 285 (2007) (where the trial court did not conduct an evidentiary hearing or make any findings of fact and relied on the parties' oral argument and the record, "we review the court's ruling on this issue *de novo*").

¶ 61　　　　Thus, we apply a *de novo* review to defendant's claims. *De novo* consideration means that we perform the same analysis that a trial judge would perform. *In re N.H.*, 2016 IL App (1st) 152504, ¶ 50 (citing *Khan v. BDO Seidman, LLP*, 408 Ill. App. 3d 564, 578 (2011)).

¶ 62　　　　　　　　　　　　　　　IV. Prejudice

¶ 63　　　　For the following reasons, we do not find prejudice on the record in this case.

¶ 64　　　　In addressing this issue, we find that defendant did not, in fact, receive a second sentencing hearing. In the record before us, we have the odd situation that the State submitted a motion stating that defendant was resentenced, while defense counsel represented to the trial court that his client was never resentenced after the appellate court vacated his armed robbery conviction. We observe that the record does not contain a transcript of a second sentencing hearing. If we had any doubts about whether there was a second sentencing hearing, those doubts were erased by Judge Morrissey's second sentencing order. Instead of stating that he had resentenced defendant, his order stated only that, back "[o]n 5-28-96 the Honorable John E. Morrissey sentenced the Deft on a verdict of guilty to a term of 60 years." Thus, in addressing this issue, we find that a second sentencing hearing was not held and that there was one and only one sentencing hearing, which was the one that was held before Judge Morrissey on May 28, 1996.

¶ 65      From the transcript of the May 28, 1996, hearing, there is simply no evidence that the trial court took the armed robbery conviction into account when sentencing defendant separately for the murder. The trial court rejected the State's pleas both for the death penalty and for consecutive sentences. However, the trial court observed that the murder was "senseless" and "vicious." Defendant shot an unarmed man twice, at point-blank range, fatally shooting him in the chest. The trial court found that deterrence and the protection of society required a 60-year sentence. Although the trial court did not mention it when sentencing defendant, we observe that the trial court heard from a police witness who testified that defendant had engaged in similar conduct in the past, namely, a violent assault in an overzealous effort to protect his prostitutes. Thus, the present offense was not the first violent assault by defendant on someone who threatened his business. As a result, we cannot find that the armed robbery conviction influenced the trial court in its completely separate sentence for murder, which is the same finding that this court previously made when considering this same issue in our prior order. *Morrow*, No. 1-00-3878, at 10-11 ("his assertion about factors that may have influenced the trial court was unsupported").

¶ 66      Defendant argues that the vacated armed robbery conviction influenced the sentencing hearing because the trial court found defendant eligible for the death penalty based on the fact that the death occurred during a felony, namely, the armed robbery. At the sentencing hearing, the trial court stated: "The facts here I agree do not impart the classic theory of murder in the course of another felony, but I will not impugn the jury verdict finding [defendant] guilty of murder and armed robbery." The court found defendant's conduct "sufficient" to establish that he was "accountable for the taking of the victim's property." However, despite finding defendant technically eligible, the trial court refused the

State's request to impose the death penalty. Thus, the trial court's eligibility finding does not suggest that the armed robbery conviction influenced the trial court's sentencing for the murder conviction. In fact, there is nothing in the record of this case that would indicate or give the impression that the armed robbery conviction had any influence whatsoever on the sentence for first degree murder.

¶ 67 Similarly, at the sentencing hearing, the State had argued that the trial court was required to impose consecutive sentences. However, the trial court rejected that argument as well, finding: "If the defendant is merely accountable for the conduct of another without doing the infliction, then I would suggest that the mandatory consecutive acts would not apply." The court then refused the State's request to impose consecutive sentences. The trial court's comments about "not impugn[ing]" the jury's verdict and the defendant's being "merely accountable" and the court's refusal to impose a consecutive sentence for the armed robbery further indicate that the armed robbery conviction did not influence its sentencing decision for the murder. Thus, we are not persuaded by the defendant's argument that the trial court's death-penalty eligibility finding shows that the vacated armed robbery conviction influenced the trial court's murder sentencing.

¶ 68 Next, defendant argues that the sentencing transcript indicates that the trial court was influenced by the vacated armed robbery conviction because the trial court referred to defendant's senseless "acts," using the plural and thereby indicating more than one act. However, this argument overlooks the fact that defendant shot the victim twice, resulting in the plural "acts." *Morrow*, 2013 IL App (1st) 121316, ¶¶ 5, 10. Also, the trial court stated that it would "not impugn" the jury's verdict of armed robbery on the ground that defendant was guilty of the robbery based on the accountability theory, not his act.

¶ 69    Defendant further observes that the trial court stated: "An unarmed man whose only mistake was to in a rather pathetic way look[ ] for sex for hire, was gunned down *because* he attempted to rightly stop a prostitute or prostitutes from taking his property, his wallet." (Emphasis added.) Defendant emphasizes the "because" in this sentence and argues that the trial court found the armed robbery was linked to the murder and, thus, that it must have influenced the trial court's sentencing decision for the murder. However, the trial court went on to state:

> "I don't think as you charged the car, you had formed a premeditated intent to take the life of the victim ***, however when you reached the window, you realized that he, the victim, was resisting, fighting the prostitutes; you shot him not once but at least twice, inflicting a fatal chest wound. There has to be a message of deterrence, [defendant], and you at an age, in your late 20's, must be sentenced so that you will no longer be a threat to society when you are released."

This statement makes clear that the trial court found that it was defendant's desire to protect his prostitutes, rather than a desire to rob the victim, that led to the victim's murder. Thus, we are not persuaded by defendant's argument that the trial court found the armed robbery to be a precipitating cause of the murder.

¶ 70    Since there is no evidence that the trial court was influenced by the armed robbery conviction, we cannot find that defendant suffered prejudice from appellate counsel's alleged failure to raise the claim. *Edwards*, 2012 IL 111711, ¶ 22 (a defendant must establish both cause and prejudice).

¶ 71                                    V. Cause

¶ 72    We also cannot find cause excusing the failure to raise the claim earlier.

¶ 73    As a preliminary matter, we observe that it does not appear that defendant's counsel on his direct appeal requested a remand for resentencing in the event that we vacated his armed robbery conviction. In a prior order of this court, we observed: "Despite challenging his armed robbery conviction on direct appeal, defendant failed to object to either the sentence imposed for the conviction *or the murder conviction.*" (Emphasis added.) *Morrow*, No. 1-00-3878, at 10-11. Thus, it appears that appellate counsel did not seek a remand for resentencing.[1]

¶ 74    However, in that same order, we also rejected almost the same claim that defendant makes now. On April 26, 1999, which was a little over a month after this court had vacated his armed robbery conviction, plaintiff filed a postconviction petition, with the assistance of counsel—much like he does now. On appeal from the dismissal of that petition, this court observed that, in that prior petition, defendant "claimed that he was denied due process by the imposition of an excessive, 60-year sentence for first degree murder because the trial court was unduly influenced by the armed robbery conviction that was later reversed." *Morrow*, No. 1-00-3878, at 4. In other words, he raised in that prior petition almost the same claim that he raises now. As a result, defendant cannot possibly establish cause, *i.e.*, a reason for not raising earlier a claim that he needed to be resentenced, because he did, in fact, raise earlier a claim that he needed to be resentenced.

¶ 75    Defendant raised it, and we ruled on it. We observed that defendant claimed:

"that, although the trial court 'clearly felt' some mitigating factors existed, the court based its maximum-term sentence for murder on his involvement in the armed

---

[1] In support of his contention that appellate counsel failed to seek a remand for resentencing, defendant cites only the pages in our opinion where we vacated the armed robbery conviction. *Morrow*, 303 Ill. App. 3d at 683-84. However, in those pages, we said nothing about whether appellate counsel did, or did not, seek such a remand.

robbery. On appeal, defendant again asserts that the trial court was unduly influenced by the armed robbery conviction, which was reversed, and contends that the 60-year sentence was excessive." *Morrow*, No. 1-00-3878, at 10-11.

In response to this claim, we found that defendant's "assertion about factors that may have influenced the trial court was unsupported. Therefore defendant's due process claim amounted to nothing more than a conclusory allegation, which was properly dismissed." *Morrow*, No. 1-00-3878, at 10-11. His prior due process claim, like his present ineffectiveness claim, required finding that the trial court was influenced by the armed robbery conviction when selecting an appropriate sentence for the murder. This court could not reach such a finding, either in our prior order in 2002 or in our opinion today. Thus, we cannot find prejudice as we explained in the prior section, and we cannot find cause because almost the same claim was previously raised and considered.

¶ 76 In his brief to this court, defendant argues that he could not raise the claim that his appellate attorneys were ineffective for failing to seek a resentencing "in his initial post-conviction petition, as it was filed while his direct appeal was still pending and would have required him to allege the ineffective assistance of his direct appeal attorneys while they were still representing him." Defendant argues that he was required to file his initial petition by May 28, 1999, and that his appeal "remained pending until the Illinois Supreme Court denied his petition for leave to appeal on June 2, 1999." In support of his argument, he cites *People v. Harris*, 224 Ill. 2d 115 (2007).

¶ 77 *Harris* is inapposite. In *Harris*, the statute of limitations forced the defendant to file his postconviction petition before any briefs in his direct appeal had been filed. *Harris*, 224 Ill. 2d at 132-133. Our supreme court found that he showed cause for filing a successive

petition to assert a claim of ineffective assistance of appellate counsel. *Harris*, 224 Ill. 2d at 134.[2] The court asked how could a defendant "argue that an attorney rendered constitutionally ineffective assistance by failing to raise certain issues on appeal before that attorney has raised *any* issues on appeal?" (Emphasis in original.) *Harris*, 224 Ill. 2d at 133. The court distinguished the case before it from the case where "the appellate court had not rendered a decision yet." *Harris*, 224 Ill. 2d at 133.

¶ 78        In contrast to *Harris*, in the case at bar, defendant's appellate counsel had filed a brief, all the briefing had been completed, and this court had already rendered a decision—all before he was required to file a postconviction petition. Thus, we do not find *Harris* persuasive.

¶ 79        To the extent that defendant is arguing that an attorney cannot be expected to raise a claim of his own ineffectiveness, the record establishes that the same attorney did not represent defendant in both the direct appeal and the first postconviction proceeding. See, *e.g.*, *People v. Lawton*, 212 Ill. 2d 285, 296 (2004) ("An attorney cannot be expected to argue his own ineffectiveness."). The record establishes that Jenner & Block was assigned to represent defendant on a *pro bono* basis in the direct appeal and that Jeffrey B. Granich represented defendant in the first postconviction proceeding. In any event, even if defendant was represented by the same attorney in both the direct appeal and the first postconviction proceeding, this fact would not change our finding because, as we already explained above, there is no evidence on the record before us that the vacated armed robbery conviction influenced the trial court's murder sentence.

_____

[2] In *Harris*, the court stated, "It is difficult to conceive of a more obvious case of cause for failing to raise a claim of ineffective assistance of appellate counsel in the initial proceeding than that the statute of limitations required that the petition be filed before the defendant's brief had been filed in the direct appeal." *Harris*, 224 Ill. 2d at 134.

¶ 80     Defendant also argues in his brief to this court that defendant "had been represented by several attorneys, none of whom recognized that this [c]ourt did not remand for resentencing," and that cause exists because the first attorney to realize the lack of a resentencing was Bruce Landrum who represented defendant on this successive petition. That is not correct. As we note above, Jeffrey B. Granich, defendant's counsel during defendant's first postconviction proceeding, argued on July 27, 2000, before the trial court, for the need for a resentencing due to the vacated armed robbery conviction.

¶ 81     Defendant also argues that he would have risked his relationship with Jenner & Block, defendant's counsel on direct appeal, by arguing its ineffectiveness in the postconviction petition filed by Granich. Defendant argues that, if the Illinois Supreme Court had granted his petition for leave to appeal (PLA), then Jenner & Block would have continued to represent him during the same time period that his postconviction proceeding was also going forward. The Illinois Supreme Court denied defendant's PLA in the direct appeal on June 2, 1999. At the direction of the trial court, the postconviction matter was redocketed for argument on June 15, 1999, which was after the PLA had been denied. There is no suggestion that the trial court—at whose behest the matter was being reconsidered— would have been adverse to a motion to amend the petition. The scheduled argument was not held until a full year later, when Granich did, in fact, argue that this issue "was not recognized by the appellate court." For these reasons and the circumstances unique to this case, we do not find this argument persuasive.

¶ 82     In sum, for all the foregoing reasons, we cannot find that defendant has shown either cause or prejudice. Without a showing of cause or prejudice, we cannot find that the trial

court erred in denying him leave to file his successive petition.

¶ 83                                         CONCLUSION

¶ 84            The trial court's denial of leave to file a successive postconviction petition is affirmed

for the reasons stated above.

¶ 85            Affirmed.

**No. 1-16-1208**

| | |
|---|---|
| **Cite as:** | *People v. Morrow*, 2019 IL App (1st) 161208 |
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 94-CR-26967(03); the Hon. Evelyn B. Clay, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Patricia Mysza, and Michael Gomez, of State Appellate Defender's Office, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg and Sara McGann, Assistant State's Attorneys, of counsel), for the People. |