2025 IL App (1st) 232068-U

No. 1-23-2068

Order filed June 18, 2025

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 87 CR 4996 |
| | ) | |
| MICHAEL GREEN, | ) | Honorable |
| | ) | Angela M. Petrone, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE REYES delivered the judgment of the court.
Justices Martin and D.B. Walker concurred in the judgment.

**ORDER**

¶ 1     *Held*:  The second-stage dismissal of defendant's postconviction petition is reversed and the cause remanded for an evidentiary hearing.

¶ 2     Defendant Michael Green appeals from the second-stage dismissal of his postconviction petition filed pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq*. (West 2004)). On appeal, he contends that he stated a claim of actual innocence based on newly discovered evidence, specifically, an affidavit from another offender claiming that defendant was

not involved in the offense. We reverse and remand for an evidentiary hearing on defendant's claim of actual innocence.

¶ 3    Defendant and Michael Jackson, L.C. Jackson, Samuel Lee, and Lawrence Brantley were indicted for the first degree murder of Mario Hernandez, as well as the armed robbery of Hernandez and Rudolfo Ramirez in Chicago, Illinois. Defendant was tried separately in a jury trial.

¶ 4    Ramirez testified that on February 5, 1987, he was working at Buy-Low Liquors on the 4300 block of West North Avenue with Hernandez and Julio Sandoval. Around 8 p.m., a customer entered to buy beer from the walk-in cooler in the back of the store. Ramirez briefly conversed with the customer, who was approximately two feet away. As the customer left, he looked towards the windows and the store cameras.

¶ 5    Later, Hernandez was behind the cash register and Ramirez was in the back of the store. Hernandez rang the buzzer to let Ramirez know that customers had entered. Ramirez saw two customers looking at bottles on the shelves. Ramirez was about 10 feet from the customers, who picked a bottle and walked to the cash register. Hernandez called Ramirez to the register because the customers did not have enough money to purchase the bottle. Ramirez put the bottle back on the shelf. The customers then asked Hernandez for a different bottle and rolling paper for cigarettes.

¶ 6    Ramirez then heard someone say, "This is a hold-up." Ramirez and Hernandez looked at each other and then looked at one of the customers, who held a firearm. Ramirez heard gunshots, dropped to the floor, felt a firearm on his head, and was told not to move. The customers made Ramirez open the cash register. Afterwards, the customers took money and Ramirez's firearm

from his pocket and told him to get back on the floor. In court, Ramirez identified defendant as the man with the firearm.

¶ 7   On February 20, 1987, Ramirez went to the police station to view a line-up. Ramirez identified the first customer who bought the beer. On February 27, 1987, Ramirez returned to the police station and viewed photographs wherein he identified the two people who "held up the store." Ramirez identified a photo of defendant as the person who shot Hernandez. In photos, Ramirez also identified where a television and radio were located in the store prior to the shooting and robbery.

¶ 8   On cross-examination, Ramirez testified that he does not wear eyeglasses. After the shooting, Ramirez told police that three people were in the store with him and Hernandez, and one was an African American male wearing dark clothes. Ramirez did not see the flash of the firearm.

¶ 9   Detective Raymon Schalk testified that on March 26, 1987, defendant was in custody on a murder warrant. Schalk interviewed defendant and told him that Lee, Brantley, and L.C. Jackson had all been arrested and gave statements. Defendant then stated that he was picked up by Brantley, Lee, L.C. Jackson, and Michael Jackson. They were driving in a vehicle that belonged to Patricia Grissom and ended up at the liquor store. Lee decided to rob the store.

¶ 10   Lee and Brantley had firearms and entered the store with Jackson while defendant stayed by the front door. Defendant saw Lee shoot the man behind the counter as the man tried to draw a firearm. Lee fired once and then ran behind the counter with Brantley. Lee took money from the cash register, the victim's firearm, and a television that was behind the counter. Brantley took a radio that was behind the counter. They left the store, and defendant was dropped off at a bus stop.

Defendant did not receive any of the money. Defendant never told Detective Schalk that he was anywhere else on February 5, 1987.

¶ 11    Grissom testified that in the early evening of February 5, 1987, her boyfriend Brantley, defendant, L.C. Jackson, Lee, and Michael Jackson were in her apartment. Grissom gave Brantley the keys to her vehicle and the five men went to the store. Later that night, after Brantley returned, they went to the apartment of L.C. Jackson's girlfriend. Outside the apartment door, Grissom heard whom she thought was L.C. Jackson, Michael Jackson, Lee, and defendant arguing about money.

¶ 12    On cross-examination, Grissom stated that a police officer threatened to kill her family if she did not give them information. After the threats, Grissom told the police officers whatever they wanted to hear.

¶ 13    Lena Posey, defendant's sister, testified that defendant was with her in Gary, Indiana from February 5 to 7, 1987.

¶ 14    Defendant was found guilty of first degree murder and armed robbery. The trial court sentenced defendant to natural life imprisonment for the murder and 30 years on each armed robbery count. On direct appeal, defendant's convictions and sentences were affirmed. See *People v. Green*, No. 1-89-1377 (1995) (unpublished order under Supreme Court Rule 23).

¶ 15    Between 1990 and 2001, defendant filed three unsuccessful petitions pursuant to the Act. See *People v. Green*, 2015 IL App (1st) 123272-U, ¶ 7 (setting forth procedural history). In 2003, defendant filed a petition for relief pursuant to section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2002)). The circuit court dismissed the petition and this court affirmed. *Green*, 2015 IL App (1st) 123272-U, ¶ 7.

¶ 16 On December 22, 2004, defendant filed a section 2-1401 petition claiming actual innocence. During proceedings, an assistant public defender entered an appearance for defendant and the circuit court recharacterized the petition as a successive postconviction petition.

¶ 17 In the petition, defendant claimed he was actually innocent of the offenses. Defendant attached, *inter alia*, a 1988 affidavit from Brantley, who admitted his own involvement in the offenses but stated that he did not see defendant at any point on February 5, 1987, and that he only told the assistant state's attorney (ASA) that defendant was present due to police pressure. Defendant asserted that he received this affidavit in 1990, but it was lost by the prison and only returned to him in 2004 by another inmate, who provided an affidavit to that effect. Defendant later supplemented his petition with, relevant here, a 2010 affidavit from Brantley reiterating that defendant was not at Grissom's apartment or at the scene of the offense on February 5, 1987. According to Brantley, he named defendant to the ASA while "trying to establish an alibi *** but instead, the police twisted it as if [defendant] was involved in the crime." Brantley provided the affidavit because his "conscious [*sic*] is heavy."

¶ 18 On July 20, 2012, the State filed a motion to dismiss defendant's successive postconviction petition, which the circuit court granted on October 12, 2012. Defendant appealed and argued, in relevant part, that he received ineffective assistance of postconviction counsel. *Id*. ¶ 2. We agreed, vacated the dismissal of defendant's successive postconviction petition, and remanded for the appointment of new counsel. *Id*. ¶ 33. On remand, new counsel was directed to amend the petition or file a certificate pursuant to Supreme Court Rule 651(c) (eff. July 1, 2017). *Green*, 2015 IL App (1st) 123272-U, ¶ 33. Upon the filing, the circuit court was directed to conduct a second-stage evaluation. *Id*.

¶ 19    In October 2021, new postconviction counsel filed a certificate pursuant to Rule 651(c) without filing an amended or supplementary petition. On June 1, 2022, postconviction counsel filed a response to the State's 2012 motion to dismiss.

¶ 20    On October 16, 2023, the circuit court denied defendant's petition, finding that Brantley's affidavit from 1998 was a nullity as it was not notarized, and that neither Brantley affidavit from 1998 nor from 2010 was newly discovered. Further, defendant did not show cause for failure to present either affidavit in an earlier filing. Additionally, taking the contents of the 2010 affidavit as true, there was no reasonable probability of a different outcome at trial because defendant was identified by Ramirez and Grissom and his statement to police placed him with the codefendants at the scene when the armed robbery and murder occurred.

¶ 21    On appeal, defendant argues that his successive postconviction petition made a substantial showing of actual innocence based on Brantley's affidavits.

¶ 22    The Act provides a three stage procedure by which those under criminal sentence can assert that their convictions resulted from a substantial denial of their rights under the United States Constitution, the Illinois Constitution, or both. 725 ILCS 5/122-1(a) (West 2004); *People v. Coleman*, 183 Ill. 2d 366, 378-79 (1998); *People v. Morales*, 2019 IL App (1st) 160225, ¶ 17. The Act contemplates the filing of only one postconviction petition. *People v. Sanders*, 2016 IL 118123, ¶ 24. There are, however, two bases upon which the bar against successive petitions will be relaxed: when the petition (1) states a colorable claim of actual innocence or (2) establishes cause and prejudice. *Id.*

¶ 23    An actual innocence challenge is "based on principles of fundamental fairness and borne out of our constitutional obligation to afford a person who presents new evidence that persuasively

indicates that he or she is factually innocent with the additional process necessary to prevent a fundamental miscarriage of justice." *People v. Taliani*, 2021 IL 125891, ¶ 67. "Our express reason for allowing a freestanding claim of actual innocence to be cognizable under our Post-Conviction Hearing Act is our firm belief that allowing an innocent person to remain incarcerated would offend all notions of fairness and due process." *Id*. (citing *People v. Washington*, 171 Ill. 2d 475, 488-89 (1996)). Claims of actual innocence can be raised repeatedly so long as the evidence is newly discovered. *People v. Mendoza*, 2024 IL App (1st) 231588, ¶ 38. Actual innocence claims are not subject to the cause-and-prejudice test. *Id.*

¶ 24    Although a petitioner generally must request leave to file a successive postconviction petition, the circuit court may *sua sponte* grant leave to file a successive petition. *Sanders*, 2016 IL 118123, ¶ 27. The circuit court did so here when it recharacterized defendant's section 2-1401 petition claiming actual innocence as a successive postconviction petition. A filed successive petition is docketed directly for second-stage proceedings. *People v. Morrow*, 2019 IL App (1st) 161208, ¶ 47.

¶ 25    In second-stage proceedings, during which counsel can be appointed, the defendant must show that his petition makes a substantial showing of a constitutional violation. *Morales*, 2019 IL App (1st) 160225, ¶ 17. The State can participate in the second stage and either answer the petition or move to dismiss. *Id*. All well-pleaded facts that are not positively rebutted by the original trial record are taken as true and the court does not engage in fact-finding or credibility determinations nor resolve any evidentiary questions. *People v. Velasco*, 2018 IL App (1st) 161683, ¶ 90. Our review of a second-stage dismissal is *de novo*. *Id*. ¶ 91.

¶ 26    Defendant argues that the postconviction court erred by dismissing his claim of actual innocence based on Brantley's affidavits.

¶ 27    To succeed on a claim of actual innocence, a defendant must present newly discovered, material, noncumulative evidence that is so conclusive that it probably would change the result on retrial. *People v. Robinson*, 2020 IL 123849, ¶ 47. Newly discovered evidence is evidence that was discovered after trial and that the defendant could not have discovered earlier through due diligence. *Id.*

¶ 28    Defendant argues that Brantley's affidavits are newly discovered, material and non-cumulative, and sufficiently conclusive. The State concedes that the affidavits are material and noncumulative, but argues that the affidavits do not contain newly discovered evidence and are not conclusive evidence of defendant's actual innocence. The State further argues that defendant was aware of Brantley and the facts in his affidavits long before trial and failed to explain why he could not have obtained Brantley's testimony through due diligence prior to trial.

¶ 29    While defendant was aware of Brantley at the time of trial, no amount of diligence could have forced Brantley to testify in view of his Fifth Amendment right to avoid self-incrimination. *People v. Edwards*, 2012 IL 111711, ¶ 38; *People v. Beard*, 2023 IL App (1st) 200106, ¶ 50. Additionally, while the circuit court stated that defendant did not show "cause" for not filing the affidavits sooner, actual innocence claims are not subject to the cause-and-prejudice test. *Mendoza*, 2024 IL App (1st) 231588, ¶ 38. Therefore, Brantley's affidavits constitute newly discovered evidence.

¶ 30    The conclusive character element requires the defendant to present evidence placing the trial evidence in a different light and undermining the court's confidence in the judgment of guilt.

*Robinson*, 2020 IL 123849, ¶ 56. New evidence is conclusive when, after considering it along with the trial evidence, a different result probably would occur. *Id*. ¶ 47. "Probability, rather than certainty, is the key in considering whether the fact finder would reach a different result after considering the prior evidence along with the new evidence." *Id*. ¶ 48.

¶ 31 When analyzing conclusiveness, the relevant question is whether it is more likely than not that no reasonable juror, hearing and believing the newly discovered evidence alongside all the other evidence presented at trial, could convict the defendant. *People v. Brooks*, 2021 IL App (4th) 200573, ¶ 44. At the second stage of postconviction proceedings, credibility is not an issue and we must take all well-pleaded facts in the defendant's petition and in the affidavits that are not positively rebutted by the record as true. *People v. Sanders*, 2016 IL 118123, ¶ 42; *People v. Watson*, 2022 IL App (5th) 190427, ¶ 33. Credibility determinations are only made at a third-stage evidentiary hearing. *Sanders*, 2016 IL 118123, ¶ 42. Thus, the court must determine "only whether the new evidence, if believed and not positively rebutted by the record, could lead to acquittal on retrial." *Robinson*, 2020 IL 123849, ¶ 60.

¶ 32 In dismissing defendant's actual innocence claims, the court below concluded that "there is no reasonable probability the outcome at trial would have been different" if Brantley testified. The State makes the same contention on appeal. We cannot come to the same conclusion.

¶ 33 At trial, Ramirez's and Grissom's eyewitness identifications of defendant and defendant's statement to police would be weighed against the evidence in Brantley's 2010 affidavit, namely, that defendant was not present at the time of the incident, which, at the second stage, must be taken as true. There is no way to evaluate the relative merits of this evidence without a credibility

determination, which is inappropriate at the second stage of proceedings. *People v. Carter*, 2013 IL App (2d) 110703, ¶ 74.

¶ 34    We also reject the State's contention that the "strong evidence presented against defendant at trial" shows that Brantley's affidavits do not meet the conclusive character requirement. Relying on *People v. Sanders*, 2016 IL 118123, the State argues that Brantley's affidavits stating defendant was not present at the scene merely contradict or conflict with the trial testimony of Ramirez and Grissom and defendant's statement to the police. The supreme court has noted, however, that "recognizing the existence of a conflict with the trial evidence is not the same as finding that the new evidence is positively rebutted." *Robinson*, 2020 IL 123849, ¶ 60; see *Sanders*, 2016 IL 118123, ¶ 48 (new evidence was positively rebutted by conclusive autopsy results). Ramirez's and Grissom's testimony, and defendant's statement to police, identified defendant as being present during the incident; this contradicts Brantley's new evidence of actual innocence, but does not positively rebut that evidence.

¶ 35    We hold that defendant carried his burden to make a substantial showing of a claim of actual innocence and, therefore, his petition should advance to a third-stage evidentiary hearing. There, the postconviction court will weigh the testimony and evidence, make credibility determinations, and resolve any evidentiary conflicts. *Carter*, 2013 IL App (2d) 110703, ¶ 74; *Velasco*, 2018 IL App (1st) 161683, ¶ 118.

¶ 36    Thus, we reverse the judgment of the circuit court dismissing defendant's claim of actual innocence and remand for a third-stage evidentiary hearing.

¶ 37    Reversed; cause remanded.